IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSEPH JEROME DENNIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-11-1303-D |
| ) | |
| ANITA TATE and JOSEPH TAYLOR, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, a state prisoner appearing pro se and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights during his incarceration at the Cimarron Correctional Facility (CCF), a private prison facility owned by Corrections Corporation of America (CCA). The matter has been referred to the undersigned Magistrate Judge for initial proceedings pursuant to § 636(b)(1)(B) and (C). A Special Report (SR) [Doc. No. 18] was filed in accordance with the court's order and with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Defendants Anita Tate and Warden Joseph Taylor have filed a motion to dismiss and brief in support [Doc. No. 19] (Defendants' Motion). Plaintiff has filed a response [Doc. No. 24], and the matter is at issue. It is recommended that Defendants' Motion be granted and the claims against both Defendant Tate and Defendant Taylor dismissed for failure to state a claim upon which relief may be granted.

**Background**

Defendant Tate, a corrections officer, reported observing Plaintiff and Ms. Caldwell touching each other inappropriately during a visit on April 24, 2011. SR, Ex. 4 (Incident

Report) p. 9.[1] The visitation officer advised Plaintiff and his visitor, Rashida Caldwell, that their visitation had been terminated, and Ms. Caldwell was asked to leave. Complaint, p. 6.[2]

Initially, Defendant Taylor suspended Ms. Caldwell's visitation privileges for six months. *Id*, Ex. 3, p. 4. Three months later, Defendant Taylor advised Ms. Caldwell and Plaintiff that he had discovered Ms. Caldwell had falsified her visitation application by claiming to be Plaintiff's sister, and therefore her visitation privileges had been suspended permanently.[3] SR, Ex. 3 pp. 2-3. Defendant Taylor further advised Ms. Caldwell that her visitation status would be reviewed if by October 24, 2011, she could provide proof that she was Plaintiff's sister. *Id.*

**Plaintiff's Claims**

Plaintiff asserts four claims for relief. All of Plaintiff's claims are based on the suspension of Ms. Caldwell's visitation privileges. Counts I and II challenge the original six-month suspension, and Counts III and IV involve the later permanent suspension of visitation.

Plaintiff first contends that Defendant Tate deprived him of his "granted family

---

[1] According to the Visitors Rules of Conduct/Violations/Sanctions, "Visits will be terminated for improper conduct, including . . . inappropriate physical contact." SR, Ex. 2 p. 2.

[2] References herein to the pages of document filed with this court reflect the court's Electronic Case Filing (ECF) pagination.

[3] Plaintiff does not challenge the constitutionality of the DOC operating procedure which limits the number of visitors and specifies the required relationships between visitors and inmates. *See* SR, Ex. 7 p. 2 (OP-0301181:A). This operating procedure specifically states that "[v]isitation is a privilege, not a right." SR, Ex. 1 p. 5.

bonding privileges"[4] by deliberately falsifying a misconduct report against him. Complaint, p. 8. In Count II, Plaintiff contends that Defendant Taylor (1) deprived him of his "granted family bonding privileges" and (2) violated his due process rights by imposing the original six-month ban on visitation before conducting an investigation. Complaint, p. 8. In Count III, Plaintiff contends that Defendant Taylor violated his equal protection rights by permanently suspending visitation with Ms. Caldwell. Complaint, p. 9. Finally, Plaintiff contends in Count IV that Defendant Taylor permanently suspended Plaintiff's visitation with Ms. Caldwell in retaliation for Plaintiff's having written a letter of complaint to CCA. Complaint, p. 9-10.

**Defendants' Motion**

In support of their Motion to Dismiss, Defendants assert that Plaintiff failed to properly exhaust his administrative remedies as to his claims and that his claims all fail to state a claim on which relief may be granted. The Prison Litigation Reform Act of 1995 (PLRA) requires that a prisoner exhaust *all* available administrative remedies before resorting to a § 1983 action in federal court. Specifically, 42 U.S.C. § 1997e(a) provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For the reasons discussed hereafter, the undersigned finds that Plaintiff has not

---

[4]Unless otherwise indicated, quotations in this report are reproduced verbatim.

exhausted the available administrative remedies with respect to his claim of retaliation by Defendant Taylor set forth in Count IV. Because the undersigned agrees that Plaintiff's allegations in Counts I, II, and III fail to state a valid claim for relief, dismissal is recommended as to these claims without inquiry into the issue of exhaustion. *See* 42 U.S.C. § 1997e(c)(2) ("In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted[] . . ., the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.").

**Standard of Review - Failure to State a Claim**

In order to survive dismissal, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556); *see also Gee v. Pacheco*, 627 F.3d 1178, 1184 (10th Cir. 2010). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991).

**Count I**

Plaintiff asserts in Count I that Defendant Tate's allegations of improper sexual activity set forth in the Offense Report were deliberately false and deprived him of "his granted family bonding privileges."[5] Complaint, p. 8. Such claim fails to allege the violation of any constitutional right.

The law clearly requires that "[t]o make a claim of denial of due process in violation of the Fourteenth Amendment, a plaintiff must show the deprivation of a protected liberty or property interest." *Schmitt v. Rice,* 421 Fed. Appx. 858, 861(10th Cir. 2011)(citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972)). Prison conditions can create liberty interest subject to due process protections; however, in *Sandin v. Conner*, 515 U.S. 472 (1995) the Supreme Court limited the scope of liberty interests to conditions involving an "atypical and significant hardship on the inmates in relation to the ordinary incidents of prison life." *Id* at 484. After *Sandin,* the Tenth Circuit Court of Appeals has repeatedly and consistently disavowed a liberty interest in visitation. *See Marshall v. Morton*, 421 Fed. Appx. 832, 838 (10th Cir. 2011)(stating that restrictions on a prisoner's visitation "are not different in such degree and duration as compared with the ordinary incidents of prisoner life to constitute protected liberty interests under the Due Process Clause"), *cert. denied*, __ U.S. __, __ S.Ct. __, 2012 WL 33454 (Jan. 9, 2012) (No. 11-7037); *see also Jenner v. McDaniel*, 123 Fed. Appx. 900, 905 (10th Cir. 2005) (holding that no protected liberty interest existed

---

[5]To the extent Plaintiff asserts a liberty interest in a "family bonding privilege," he offers no authority for such a protected interest.

in visitation privileges); *Marsh v. Newton*, No. 97-2157, 1998 WL 39235, * 1 (10th Cir 1998) (rejecting a prisoner's due process claim because her alleged restriction on visitation did not involve an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" (citation omitted)) ; *Abad v. Furlong,* No. 96-1095, 1996 WL 693057, at *1 (10th Cir. 1996) ("Plaintiff's loss of . . . visitation rights, sanctions imposed apart from the disciplinary proceedings, fail[s] to provide a basis for a federal constitutional claim." (citations omitted)); *see also Douglas v. Hilligoss*, 2010 WL 1329075 (W.D. Okla. Feb. 26, 2010) (unpublished report and recommendation by magistrate judge) (recommending dismissal of inmate's action with prejudice on grounds that an inmate had no protected liberty interest in a prison job, visitation privileges, telephone use, or recreation), adopted, 2010 WL 1328701 (W.D. Okla. Mar. 29, 2010) (unpublished order by district judge); *cf. Kentucky Department of Corrections v., Thompson*, 490 U.S. 454 (1989) (pre-*Sandin* holding that two prisoners lacked a protected liberty interest in visitation with particular individuals). Thus, because Plaintiff cannot show a constitutionally protected interest in his visitation privileges, his claim that Defendant Tate deprived him of the visitation opportunity fails to state a viable claim for relief.

The undersigned finds therefore that Plaintiff's claim against Defendant Tate fails to state a claim upon which relief can be granted, and it is recommended that such claim be dismissed with prejudice.

**Count II**

In Count II, Plaintiff alleges that Defendant Warden Taylor's 6 month suspension of

Ms. Caldwell's visitation privileges violated his "5th Amendment rights by depriving him of his granted family bonding privileges without proving due process." Complaint, p. 8. Plaintiff contends that Defendant Taylor accused him, deemed him guilty, and imposed 180 days punishment without conducting an investigation or affording him due process. *Id.* Plaintiff further asserts that because the misconduct initially charged against him was ultimately dismissed, he was therefore "vendicated of this Sexual Activity Offense."[6] *Id*. at 9.

As previously discussed, because of the absence of a protected liberty interest in visitation privileges, Defendant Taylor had no constitutional obligation to provide due process before restricting Ms Caldwell's visitation privileges. *See Fristoe v. Thompson*, 144 F.3d 627, 630 *(*10th Cir. 1998) (for the plaintiff "[t]o make out a due process claim," he has to "assert the infringement of a protected liberty interest" (citation omitted)); *see also Kentucky Dept. of Corrections v. Thompson*, 490 U.S. at 461 ("The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, . . . and therefore is not independently protected by the Due Process Clause.").

---

[6]Plaintiff contends that he was told the misconduct was dismissed because a video tape of the visit showed that there was no inappropriate sexual activity between him and Ms. Caldwell. SR, Ex.7 p.4. He argues that Defendant Taylor should have "viewed the video tape evidence before "depriving the Plaintiff of a right or privilege." Plaintiff's Response [Doc. No. 24] pp. 4-5. Defendants contend the misconduct was simply handled informally. Complaint, Ex. 3 p. 1. This factual dispute notwithstanding, the incident report by Defendant Tate stating she had personally observed the described sexual behavior between Plaintiff and his visitor, Ms. Caldwell, *see* SR, Ex. 4, p. 9, provided the basis for Defendant Taylor's initial decision pursuant to DOC visitation policies, *see* SR, Ex.1 p. 10 and Ex.2; *see also* Doc. 1, Ex. 7 p. 5.

Thus, Plaintiff's allegation that Defendant Taylor suspended Ms. Caldwell's visitation privileges without affording Plaintiff due process fails to state a claim upon which relief can be granted and it is recommended that such claim be dismissed with prejudice.

**Count III**

In Count III, Plaintiff alleges that Defendant Taylor's permanent suspension of Ms. Caldwell's visitation rights violated his right to equal protection under the Fourteenth Amendment. As supporting facts, Plaintiff contends only that "visitation is afforded to all Federal, State, and Private Prison Offenders who are similar situated." Complaint, p. 9. He also alleges that an offender must receive three rule infractions before visitation privileges can be permanently suspended although he fails to explain the relevance of this allegation to his equal protection claim. *Id.*

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. "[T]he Fifth Amendment imposes on the Federal Government the same standard required of state legislation by the Equal Protection Clause of the Fourteenth Amendment." *Schweiker v. Wilson*, 450 U.S. 221, 226 n. 6 (1981). Plaintiff's claim does not involve the denial of a fundamental right because, as previously discussed, inmates do not have a constitutional right to unrestricted visitation. *See Abad v. Furlong*, No. 96-1095, 1996 WL 693057 (10th Cir 1996) (unpublished op) ("Plaintiff's loss of . . . visitation rights, sanctions imposed apart from the disciplinary proceedings, fail[s] to provide a basis for a federal constitutional claim." (citations omitted)). And because inmates do not constitute a

suspect class, Plaintiff has not alleged differential treatment based on a suspect classification. In order to state a viable equal protection claim Plaintiff must therefore allege that the distinction between his treatment and that of other inmates was not reasonably related to some legitimate penological purpose. *See Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) (citation omitted).

Plaintiff's Complaint fails to include any factual allegations that Plaintiff was treated differently than other inmates or to "overcome the presumption of government rationality . . . ." *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995). The undersigned finds that Plaintiff's conclusory allegations are insufficient to state a valid equal protection claim, and it is therefore recommended that such claim be dismissed.

**Count IV**

Finally, Plaintiff alleges that Defendant Taylor's permanent suspension of Ms. Caldwell's visitation rights was imposed in retaliation for his complaints to DOC and CCA about the original six month suspension of visitation rights. Complaint, p. 9-10. Because the parties have submitted and the Court has considered evidence outside the pleadings, Defendants' motion to dismiss has been construed as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court must view the facts and inferences drawn from the record in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th

Cir. 2006)(quotation omitted). Though a *pro se* plaintiff's complaint is liberally construed, a *pro se* plaintiff must adhere to the same rules of procedure which are binding on all litigants. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Thus, strict adherence by a *pro se* plaintiff to the requirements of Fed. R. Civ. P. 56 is required.

Additionally, when an affirmative defense - such as the failure to exhaust administrative remedies - is asserted in a dispositive motion, Defendants "must demonstrative that no disputed material facts exists regarding the affirmative defense asserted." *Hutchison v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). "If the defendant[s] meet[] this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." *Id.* "If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant[s] [are] then entitled to summary judgment as a matter of law." *Id.*

The undersigned has carefully reviewed the record of Plaintiff's efforts to exhaust his administrative remedies and finds that the undisputed material facts clearly demonstrate that he has not exhausted the available remedies with respect to his claim of retaliation.

The Prison Litigation Reform Act of 1995 (PLRA) requires that a prisoner exhaust *all* available administrative remedies before resorting to a § 1983 action in federal court. Specifically, 42 U.S.C. § 1997e(a) provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* In construing this legislation, the United States Supreme Court has determined that

"exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). A prisoner, such as Plaintiff, successfully exhausts administrative remedies by completing the administrative review process established by the prison grievance procedure. *Id.* at 218. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002). To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007).

In support of his retaliation claim, Plaintiff asserts that after "weeks of no response (to his request for reinstatement of Ms. Caldwell's visitation privileges) the plaintiff addressed the complaint with CCA owners in Accordance with CCA Handbook Rules for Offenders." Complaint, p. 9. According to Plaintiff, in response to this complaint, "Defendant Taylor retaliated by imposing more Onerous Punishment from 6 months to Permanently." *Id.*, p. 10. Plaintiff states that he was grieving his complaint which he had a right to do, that Defendant Taylor's permanent suspension of visitation rights was an adverse action that destroyed "chances of family bonding," and that "the causal connection is clear." *Id.*

Plaintiff contends that his letter[7] to CCA Owners, dated July 18, 2011, was the basis

---

[7]In his letter Plaintiff complains that Ms. Tate's allegations of sexual activity were false and that after the video tape was viewed, the misconduct had been dismissed. *Id.* He
(continued...)

for Defendant's retaliatory decision on July 26, 2011, to suspend Ms. Caldwell's visitation privileges permanently. *See* Doc. 1, Ex. 4 p. 1. No response to this letter appears in the record. The first and only mention by Plaintiff of his retaliation claim is found in a second letter to CCA dated August 4, 2011. Complaint, Ex. 6 p. 2 ("Warden Taylor is not permitted to retaliate on a prisoner because the prisoner has chosen to exercise his constitutional right to protect his granted visitation privilege that was wrongfully suspended."). On that same day, Plaintiff filed a request to staff (RTS) to Defendant Taylor per DOC policy asserting that Defendant Tate's allegations were false and that if the warden had conducted an investigation and viewed the video, he would have dismissed the false allegations as well. Complaint, Ex. 7 pp. 2-3. The RTS concludes with Plaintiff's claim that "visitation should be reinstated because of the harm we have received by these False Allegation imposed by your Trained staff." *Id.* Ex. 7 p. 3. No mention is made in this RTS that Defendant Taylor had retaliated against Plaintiff because of his complaint to CCA. On August 17, 2011, Plaintiff submitted a grievance as to Defendant Taylor's denial of his RTS, which grievance makes no mention of any retaliation by the warden. *Id.* Ex. 7, p. 4. Likewise, Plaintiff's appeal of Defendant Taylor's denial of his grievance fails to raise a claim of retaliation by the warden. *Id.* Ex. 7, p. 6. The record also includes an "Informal Resolution" dated January 4, 2012, and submitted by Plaintiff, SR, Ex. 7 pp. 7-8, which is apparently a form used pursuant to the

---

[7](...continued)
submits questions to the "CCA Owners" and requests reinstatement of his visitation privileges, an apology, and relocation of either Ms. Tate or Plaintiff to another facility. *Id.*

12

CCA grievance procedure. SR, Ex. 6 pp. 2-15. In that document Plaintiff claims that his visitation with Rashida Caldwell was wrongfully terminated and reasserts his request for reinstatement of such privileges. SR, Ex. 7 p. 7. Again, however, no claim of retaliation is included in this document.

Defendants note that the grievance policies of DOC and CCA are similar in that both first required an attempt at informal resolution, followed by a formal grievance, with a final appeal to the DOC. Defendants' Motion, p. 3. In response to Defendants' assertion that he had failed to exhaust his administrative remedies by grieving his claims, Plaintiff states only that "Plaintiff properly exhausted all claims pertinent to the matters before this Court; as they were all related." Plaintiff's Response, p. 4. Such explanation wholly fails to meet Plaintiff's burden to "demonstrate with specificity the existence of a disputed material fact" regarding his exhaustion of all available administrative remedies before bringing his retaliation claim to federal court. Plaintiff has not challenged Defendants' evidence that Plaintiff failed to properly complete the grievance process by submission of a request to staff, a grievance or a grievance appeal with respect to his retaliation claim.

Thus, the undersigned finds, based on the record before the court, that Plaintiff has failed to exhaust his administrative remedies, and that Defendant Taylor is entitled to summary judgment as a matter of law on Plaintiff's claim against him for retaliation.

**RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

It is recommended that Defendants' motion to dismiss [Doc. No. 19] be granted as to the claims in Counts I, II and III, and that such claims be dismissed. It is also recommended

that the motion to dismiss be construed as a motion for summary judgment and that summary judgment be granted to Defendant Taylor with respect to the claim in Count IV. In light of the recommended disposition of this case, it is further recommended that Plaintiff's motion for preliminary injunctive relief [Doc. No. 21], motion for discovery [Doc. No. 29] and motion for summary judgment [Doc. No. 33] be denied. Finally, it is recommended that Defendants' motion for protective order [Doc. No. 28] be denied as moot.

The parties are advised of their right to object to this Report and Recommendation by October 2, 2012, in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 12th day of September, 2012.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE